IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

KWAITEL JACKSON PLAINTIFF

V. CIVIL ACTION NO. 4:18-CV-181-SA-JMV

CITY OF LELAND, et al. DEFENDANTS

ORDER AND MEMORANDUM OPINION

Kwaitel Jackson initially filed his Complaint [2] in the Circuit Court of Washington County, Mississippi on April 23, 2018. The Defendants removed the case to this Court, premising jurisdiction on the basis of federal question. After extensive motion practice in this Court, the only remaining defendants are the City of Leland and Officer Corey Weatherspoon, in both his individual and official capacity. On October 29, 2019, Officer Weatherspoon filed a Motion for Qualified Immunity and for Summary Judgment [56], and the City of Leland filed a Joinder [61] to the Motion. The Motion has been fully briefed and is now ripe for review.

*Relevant Factual and Procedural Background*

At approximately 11:30 PM on August 2, 2016, Officer Weatherspoon of the Leland Police Department received a call from a confidential informant. According to Officer Weatherspoon, the confidential informant provided a tip that Kwaitel Jackson possessed crack cocaine and was located inside McCray's Grocery, a convenience store and "neighborhood hang-out spot" in Leland. The informant stated that he had personally observed Jackson sell crack cocaine to a black male and that Jackson was concealing additional drugs in his sock. The informant also told Officer Weatherspoon that Jackson was wearing a white t-shirt and blue jeans and that his hair was styled in braids. According to Officer Weatherspoon, the confidential informant aided the Leland Police

Department in investigations and controlled substance sales on multiple occasions prior to August 2, 2016.

After receiving the call, Officer Weatherspoon went to McCray's to investigate.[1] At around 11:45 PM, Officer Weatherspoon entered the store. Jackson was standing on the left side of the cash register counter wearing a white t-shirt and blue jeans. There were at least six other people engaged in conversations around the cash register area at the time Officer Weatherspoon entered.

Officer Weatherspoon immediately approached Jackson and requested that Jackson "step outside" with him. After Jackson shook his head in response to this request, Officer Weatherspoon stated "look, either you step outside with me, or things might escalate." Jackson then asked Officer Weatherspoon if he had a warrant. After Officer Weatherspoon stated that he did not need a warrant, Jackson stated "you're crazy, man." At this time, Officer Weatherspoon directed Jackson to put his hands behind his back. Jackson refused to do so. Tensions then began to increase. Officer Weatherspoon attempted to grasp Jackson's right arm, and Jackson pushed him away. Jackson began to walk behind the cash register area and away from Officer Weatherspoon. At this point, several individuals inside the store, including both Jackson and Officer Weatherspoon, began yelling.

Officer Weatherspoon then followed Jackson behind the cash register counter, continually directing him to place his hands behind his back. He also specifically directed Jackson to "stop resisting." As Officer Weatherspoon again reached out toward Jackson, he slapped Officer Weatherspoon's hand away and said "Man, get back man." Officer Weatherspoon then again tried to grasp Jackson's arm, and Jackson pushed Officer Weatherspoon away with both hands. A scuffle then ensued, and Jackson continued refusing to comply with Officer Weatherspoon's

[1] A fifteen-minute video from Officer Weatherspoon's body cam was attached to the Motion [56]. The video begins when Officer Weatherspoon enters McCray's. The Court has reviewed and considered the video in making its ruling.

requests that he place his hands behind his back.[2] Jackson was ultimately arrested.[3] When the video can be seen again, Officer Weatherspoon is behind the cash register counter talking to other people who were inside the store. Officer Weatherspoon can be heard asking these individuals to help him find his glasses. Jackson was outside in handcuffs with other police officers.

After the altercation, Jackson received medical treatment for an injury to his eye. Although Jackson has provided the Court with no documentation regarding his injury, the medical records attached to Officer Weatherspoon's Motion [56] indicate that Jackson complained of left eye pain and blurry vision.

On September 13, 2017, Jackson's counsel sent a Notice of Claim Letter to Leland Mayor Kenny Thomas [56-7]. Jackson filed his Complaint [2] in the Circuit Court of Washington County, Mississippi on April 23, 2018, alleging that Officer Weatherspoon unlawfully assaulted him. He also asserted a litany of claims against the City of Leland, the Leland Police Department, Mayor Thomas, Police Chief Billy Barber, and Officer Weatherspoon. Specifically, Jackson stated Officer Weatherspoon struck him in the eye and body with brass knuckles and slammed him to the concrete floor. *See* [2]. The case was ultimately removed to this Court. *See* [1]. On April 30, 2019, this Court entered an Order and Memorandum Opinion [26], denying Jackson's Motion to Remand and directing that he file an amended pleading constituting a more definite statement.

Jackson thereafter filed an Amended Complaint [29] on May 14, 2019. In addition to the original defendants, Jackson's Amended Complaint [29] also asserted claims against Leland Police Officers Combs and James. Officers Combs and James were ultimately dismissed due to the

[2] At this point in the video (the 1:15 mark), the video from Officer Weatherspoon's body camera went completely black. The video can be seen again at the 5:11 mark of the video. Throughout this time, however, the audio can still be heard.

[3] Although he does not appear in the video prior to the arrest, Officer Combs of the Leland Police Department entered the store at some point. According to Officer Weatherspoon's Affidavit [56-1], Officer Combs assisted him with effectuating the arrest. Jackson also states in his Affidavit [65] that Officer Combs arrived on the scene prior to the arrest.

Plaintiff's failure to serve them with process in accordance with the Federal Rules of Civil Procedure, and the Court also dismissed all claims against the Leland Police Department, Chief Barber, and Mayor Thomas. *See* [71].

The only remaining defendants are the City of Leland and Officer Weatherspoon, in both his individual and official capacity. The Plaintiff alleges that those defendants are liable for violations of his Fourth and Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983. Additionally, Jackson has made a federal conspiracy claim against Officer Weatherspoon pursuant to 42 U.S.C. § 1985. He also asserts state law claims for false arrest and assault.

*Analysis and Discussion*

Before analyzing the substance of Jackson's claims, the Court first feels compelled to note several procedural failures which the Plaintiff has committed throughout the course of this litigation that have ultimately convoluted many of the issues at hand.

*I. Procedural Issues*

The first procedural shortcoming concerns written discovery propounded to the Plaintiff by Officer Weatherspoon. On July 23, 2019, approximately two months after Jackson filed his Amended Complaint [29], Officer Weatherspoon filed a Notice of Service [48] of First Set of Interrogatories and Requests for Admission Propounded to Plaintiff. In his Motion [56], Officer Weatherspoon contends that Jackson never responded to the Requests for Admission and that they are therefore deemed admitted pursuant to Rule 36(a)(3) of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 36(a)(3) ("A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection[.]"). Undoubtedly, if the Requests are admitted, it would greatly undermine, and perhaps completely destroy, the viability of Jackson's claims. For example, the Requests ask Jackson to

admit, among other things, that Officer Weatherspoon did not strike him with brass knuckles and that Officer Weatherspoon did not strike him at any time after Jackson was handcuffed. [56-6]. In response, Jackson states that "neither Counsel for the Plaintiff has ever received the Interrogatories or seen the Request for Admissions." [64]. However, Jackson does not assert that his counsel never received the electronic Notice of Service and, further, he explains no efforts that were made to obtain the discovery documents. Likewise, Jackson never moved to have the admissions set aside.

Even taking as true Jackson's attorneys' representations that the Requests for Admission were never received, they have failed to act prudently in this matter. Again, Jackson's attorneys do not—and, frankly, cannot—dispute that they received the Notice of Service [48] but apparently took no action to attempt to obtain the underlying discovery documents. This failure to act has placed the Defendants, and now the Court, in an undesirable position. Nevertheless, while it has authority to deem the Requests admitted pursuant to the plain language of Rule 36(a)(3), the Court will, rather than deciding the case based solely on those admissions, consider the merits of the case.

The Court also notes the Plaintiff's failure to comply with the Local Rules. Officer Weatherspoon filed the present Motion [56] on October 29, 2019. Therefore, pursuant to Local Rule 7(b)(4), Jackson's Response was due on or before November 12, 2019. *See* L.U. Civ. R. 7(b)(4). Jackson did not file his Response and supporting Memorandum [63, 64] until November 26, 2019—two weeks after his deadline. Although the Defendants represent that Jackson's counsel did inquire of them whether the Defendants opposed a two-week extension for the Plaintiff to file his Response (which the Defendants did not oppose), the Plaintiff never requested an extension from the Court. The Plaintiff's failure to do so ran afoul of the Local Rules. *See* L.U. Civ. R.

7(b)(4) ("A party must make any request for an extension of time in writing to the judge who will decide the motion.").

When filed, Jackson's untimely Response [63] had no exhibits attached to it. Thus, Jackson placed before the Court no affidavits, transcripts, or other evidence to support his position. However, the following day—the day after the parties' agreed-upon extension which was never granted by the Court, Jackson filed a Supplement [66] to his Response and an Affidavit in Opposition to Summary Judgment [65], which was an affidavit signed by Jackson setting forth his version of events on the night in question. Jackson never requested leave of Court to file this document. On December 10, 2019, Officer Weatherspoon filed a Motion to Strike [69] the Affidavit on the basis that it was untimely filed and contradicted the admissions which he made by failing to respond to the Requests for Admission. Jackson never responded to the Motion to Strike.

Although Jackson's failure to respond to the Motion to Strike [69] constitutes a basis for the Court to grant the relief sought by the Defendants, which would leave the Plaintiff with no evidence whatsoever to support his Response [63], the Court will again grant leniency to the Plaintiff and nevertheless address the merits of the Motion [56], particularly in light of the fact that the Court has the benefit of a video of the subject incident. *See* L.U. Civ. R. 7(b)(3)(E) ("If a party fails to respond to any motion, other than a dispositive motion, within the time allotted, the court may grant the motion as unopposed."); *United States v. Reagan*, 596 F.3d 251, 254 (5th Cir. 2010) (holding that failure to adequately brief an argument results in a waiver).

Perhaps Jackson's most significant procedural failure relates to his argument that Officer Weatherspoon's Motion for Qualified Immunity and for Summary Judgment [56] was filed prematurely. Jackson avers that, rather than the summary judgment standard, the Court should

apply the Rule 12(b)(6) standard to Officer Weatherspoon's Motion because Jackson has not had time to conduct adequate discovery. *See* [64]. Alternatively, Jackson makes a passing reference to Rule 56(d) and states that he should "be allowed sufficient time to conduct reasonable discovery on the issue of the Defendants' liability before claims against them are dismissed by this Court." [64].

Rule 56 of the Federal Rules of Civil Procedure provides that "[u]nless a different time is set by local rule or the court orders otherwise, a party may file a motion for summary judgment at any time until 30 days after the close of all discovery." Fed. R. Civ. P. 56(b). Thus, Officer Weatherspoon was clearly in compliance with Rule 56 when he filed his Motion [56], as the Motion was filed prior to the motions deadline imposed by this Court and well before the close of discovery. While Officer Weatherspoon was certainly within his rights to file the Motion [56] when he did, Rule 56(d) sets forth a procedural mechanism through which a non-moving party may seek relief when certain facts are unavailable at the time the motion is filed, providing:

> **When Facts Are Unavailable to the Nonmovant.** If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
> (1) defer considering the motion or deny it;
> (2) allow time to obtain affidavits or declarations or to take discovery; or
> (3) issue any other appropriate order.

Fed. R. Civ. P. 56(d).

While Rule 56(d) may provide relief for a non-moving party in certain circumstances, "Rule 56(d) motions 'must set forth a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably exist and indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion.'" *McDougle v. Neshoba Cty., Miss.*, 2016 WL 83785, at *1 (S.D. Miss. Jan. 7, 2016) (quoting *Raby v. Livingston*,

600 F.3d 552, 561 (5th Cir. 2010)). The Fifth Circuit has also directed that Rule 56(d) motions should be liberally granted in order to "safeguard non-moving parties from summary judgment motions that they cannot adequately oppose." *Am. Family Life Assur. Co. of Columbus v. Biles*, 714 F.3d 887, 894 (5th Cir. 2013).

Despite Rule 56(d) providing a mechanism through which Jackson could potentially obtain time to conduct additional discovery, he has done nothing to show that more discovery is needed. As an initial matter, Jackson makes only a passing reference to Rule 56(d). He failed to file a motion or file an affidavit or declaration to support his request, which is specifically required in the language of Rule 56(d). *See* Fed. R. Civ. P. 56(d) ("If a nonmovant shows *by affidavit or declaration* . . .") (emphasis added). And in his Memorandum [64], Jackson provides no plausible basis for believing that specific facts might be discovered if an opportunity for additional discovery is granted. Instead, he makes only vague reference to Rule 56(d). *See Miller v. City of Leland*, 2020 WL 1539929, at *1 (N.D. Miss. Mar. 31, 2020) ("The nonmovant may not simply rely on vague assertions that discovery will produce needed, but unspecified facts.") (quoting *Smith v. Reg'l Transit Auth.*, 827 F.3d 412, 422-23 (5th Cir. 2016)). Stated concisely, Jackson's mention of Rule 56(d) is nothing more than a passing reference, which clearly falls short of the applicable standard.

The Court must also note that Jackson has been far from diligent in discovery thus far in the case. Jackson has failed to respond to propounded discovery or, at a minimum, failed to seek a copy of undelivered discovery documents, despite receiving an electronic Notice of Service. In other words, the Court has no reason to believe that time for additional discovery will do anything other than cause further delay of this matter. Furthermore, as noted above, Officer Weatherspoon has attached to his Motion [56] a video of the subject incident, therefore providing the Court an

opportunity to see exactly what occurred at McCray's Grocery on the night in question. Taking into account all of these factors, particularly Jackson's failure to comply with the language of Rule 56(d), the Court denies Jackson's request for additional time to conduct further discovery in connection with the present Motion [56]. *See, e.g.*, *Miller*, 2020 WL 1539929, at *3 (denying plaintiff's request for relief under Rule 56(d) because plaintiff did not identify any specific facts or how such facts could be collected in a reasonable time frame). Instead, the Court will consider the Motion [56] in light of the evidence presently before it.

*II. Federal Claims*

As noted above, Jackson has asserted federal claims based upon Section 1983 and Section 1985. Jackson's Section 1983 claims against Officer Weatherspoon and the City of Leland are based upon false arrest and excessive force. While Jackson invokes both the Fourth and Fourteenth Amendment, his Fourteenth Amendment claims are improper and therefore dismissed at the outset.[4] In his Section 1985 claim, Jackson alleges that Officer Weatherspoon, along with Officers Combs and James, "conspired, colluded, planned and/or schemed to accuse [Jackson] of assault on a police officer to cover up the intentional, malicious, violent and unlawful beating and assault of [Jackson] committed by [Officer Weatherspoon]." [29].

*A. Section 1983 Claims*

"Regarding Section 1983, the United States Supreme Court has held that the statute's 'very purpose . . . was to interpose the federal courts between the States and the people, as guardians of the people's federal rights—to protect the people from unconstitutional action *under color of state law*.'" *Alexander v. McAdams*, 2017 WL 5642328, *3 (N.D. Miss. Apr. 18, 2017) (quoting

[4] "[W]hen a claim is properly analyzed under the Fourth Amendment, the Fourteenth [Amendment] is inapplicable." *Malbrough v. Stelly*, --- F. App'x ---, 2020 WL 2507355, at *3 n.7 (citing *Graham v. Connor*, 490 U.S. 386, 395, 109 S. Ct. 1865, 104 L.Ed.2d 443 (1989)). Jackson's claims clearly fall within the purview of the Fourth Amendment; therefore, his Fourteenth Amendment claims must be dismissed.

*Mitchum v. Foster*, 407 U.S. 225, 242, 92 S.Ct. 2151, L.Ed.2d 705 (1972)) (emphasis in original). In order to state a claim under Section 1983, a plaintiff must "(1) allege he has been deprived of a right secured by the United States Constitution or the laws of the United States; and (2) demonstrate that the alleged violation was committed by a person acting under color of state law." *Weeks v. Thompson*, 2007 WL 316261, *2 (N.D. Miss. Jan. 31, 2007) (citing *Cornish v. Correctional Services Corp.*, 402 F.3d 545, 549 (5th Cir. 2005)).

There is no debate that different standards are applicable to a Section 1983 claim against a municipality and an individual capacity claim against a law enforcement officer. *See Weeks*, 2007 WL 316261, at *2 ("Municipal liability under section 1983 requires proof of (1) a policymaker, (2) an official policy, and (3) a violation of constitutional rights whose 'moving force' is the policy or custom."); *Mangieri v. Clifton*, 29 F.3d 1012 (5th Cir. 1994) (holding that law enforcement officers are entitled to qualified immunity "unless it is shown that, at the time of the incident, [the officer] violated a clearly established constitutional right."). However, regardless of whether a plaintiff seeks to impose liability against a municipality or against an individual law enforcement officer, the plaintiff must establish a constitutional violation. *See Thompson v. Beasley*, 309 F.R.D. 236, 249-50 (N.D. Miss. 2015). In other words, if the plaintiff cannot establish a constitutional violation, a Section 1983 claim cannot be made against an officer *or* a municipality. *Id*. The Court will therefore first consider whether Jackson has provided sufficient evidence to survive summary judgment on the occurrence of a constitutional violation as to both his false arrest claim and his excessive force claim.

*i. False Arrest*

Jackson first contends that he "was deprived of his right to be secure in his person against unreasonable physical attacks or seizure of his person[.]" [29]. Officer Weatherspoon contends

that the information provided to him by the confidential informant created reasonable suspicion to stop Jackson and that by the time he actually effectuated the arrest, Jackson "had displayed disorderly conduct, committed assault on an officer, and resisted arrest." [58].

Reasonable suspicion "does not have to be based on a personal observation. It can be based on information provided by a confidential informant, if the information possesses an indicia of reliability. In examining the totality of the circumstances, the informant's veracity, reliability, and basis of knowledge . . . are important factors; however, a deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or some other indicia of reliability." *U.S. v. Roch*, 5 F.3d 894, 898 (5th Cir. 1993) (quoting *United States v. Jackson*, 818 F.2d 345, 348 (5th Cir. 1987); *Illinois v. Gates*, 462 U.S. 213, 233, 103 S. Ct. 2317, 2329, 76 L. Ed. 2d 527 (1983)); *see also U.S. v. Castro*, 647 F. App'x 388, 391-92 (5th Cir. 2016) (quoting *U.S. v. Martinez*, 486 F.3d 855, 864 (5th Cir. 2007)) ("An informant's tip can form a basis for reasonable suspicion if it is marked by 'indicia of reliability.' In determining whether a tip provides reasonable suspicion, we consider a number of factors, including: 'the credibility and reliability of the informant, the specificity of the information contained in the tip or report, the extent to which the information in the tip or report can be verified by officers in the field, and whether the tip or report concerns active or recent activity, or has instead gone stale.'").

In his Affidavit [56-1], Officer Weatherspoon stated as follows regarding the confidential informant who provided the tip regarding Jackson on the night in question:

> On the evening of August 2, 2016, at approximately 11:30 p.m., I received a call from a confidential informant providing a tip that Kwaitel Jackson was located in McCray's Grocery Store and possessed crack cocaine. The informant stated that he personally saw Jackson sell crack to a light complexioned black male and stated that Jackson was concealing the drugs in his sock. The informant provided further details on Jackson's appearance – that he was

> wearing a white t-shirt and blue jeans and that his hair was styled in braids.
>
> I am familiar with the confidential informant who provided the tip regarding Jackson. He has aided Leland Police Department in investigations and successful controlled sales on numerous occasions. To protect his identity throughout his cooperation with Leland, he was designated 'CI 16-01' prior to this incident. CI 16-01 had proven credible and reliable during numerous narcotics investigations prior to his incident.

According to Officer Weatherspoon's sworn testimony, throughout his experiences with the confidential informant, the informant had proven to be truthful and be reliable. Furthermore, the informant personally observed Jackson sell drugs shortly prior to the subject incident. According to the informant, the sale had recently occurred and Jackson still had illegal drugs on his person at the time. In addition, the information provided by the informant regarding Jackson's appearance was verified by Officer Weatherspoon when he entered McCray's. On the other hand, Jackson has provided no argument that Officer Weatherspoon did not have reasonable suspicion, instead largely basing his argument on the fact that Officer Weatherspoon did not have a warrant to arrest him and ultimately that probable cause did not exist. Taking into account the totality of the circumstances, as well as Jackson's failure to oppose Officer Weatherspoon's position on this point, the Court finds that Officer Weatherspoon did have reasonable suspicion to conduct a stop on Jackson. *See Roch*, 5 F.3d 894, 898 (directing that reasonable suspicion be evaluated based upon the totality of the circumstances).

Turning now to the arrest itself, it is well-settled that the lack of probable cause is "a necessary component" of a false arrest claim. *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 813 (5th Cir. 2010); *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009) ("If there was probable cause for any of the charges made . . . then the arrest was supported by probable cause, and the claim for false arrest fails.") (emphasis omitted) (additional citations omitted); *Brown v. Lyford*,

243 F.3d 185, 189 (5th Cir. 2001) ("The 'constitutional torts' of false arrest, unreasonable seizure, and false imprisonment . . . require a showing of no probable cause."). "Probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Curtis v. Anthony*, 710 F.3d 587, 595 (5th Cir. 2013) (quoting *Ill. v. Gates*, 462 U.S. 213, 245 n. 13, 103 S. Ct. 2317, 76 L.Ed.2d 527 (1983)). Therefore, "probable cause exists when the totality of facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *Id*. (quoting *Mack v. City of Abilene*, 547, 552 n.1 (5th Cir. 2006)). "For warrantless arrests, the test for whether the police officer had probable cause to arrest is if, at the time of the arrest, he had knowledge that would warrant a prudent person's belief that the person arrested had already committed or was committing a crime." *Mangieri v. Clifton*, 29 F.3d 1012, 1016 (5th Cir. 1994) (quoting *Duckett v. City of Cedar Park*, 950 F.2d 272, 278 (5th Cir. 1992)).

Officer Weatherspoon asserts that, at the time he arrested Jackson, probable cause existed as to at least three different charges—disorderly conduct, assault on an officer, and resisting arrest. Regarding disorderly conduct, Section 97-35-7 of the Mississippi Code grants police officers significant authority to effectuate an arrest when an individual refuses to comply with a valid command. *See* Miss. Code Ann. § 97-35-7(1). Specifically, the statute provides that an individual is guilty of a misdemeanor if they "with the intent to provoke a breach of the peace, or under such circumstances as may lead to a breach of the peace, or which may cause or occasion a breach of the peace, fail[] or refuse[] to promptly comply with or obey a request, command, or order of a law enforcement officer[.]" *Id*. Concerning this statute, the Mississippi Supreme Court has recently held that that an individual's refusal to promptly comply with an officer's command "constituted

a circumstance 'which may cause or occasion a breach of the peace[.]'" *S.M.K.S. v. Youth Court of Union County*, 155 So.3d 747, 750 (Miss. 2015).

Here, Officer Weatherspoon asked Jackson to step outside with him. Jackson refused to do so. This Court has recently noted that the disorderly conduct statute "in effect, equips the officer with a proactive tool to avoid a potential breach of the peace. Meaning the statute as written requires the officer to make a judgment call—based on the information available to him or her at the time—at to whether the suspect's conduct might lead to a breach of the peace." *Simmons v. Fair*, 2020 WL 1539935, at *4 (N.D. Miss. Mar. 30, 2020).

In the Court's view, once Jackson refused to comply with his commands, began walking away from him while raising his voice, and became increasingly agitated, Officer Weatherspoon had probable cause to believe that Jackson had intent to breach the peace. Again, Jackson became increasingly hostile toward Officer Weatherspoon while he was inside the store—refusing to comply with his request that he step outside, then walking away from him while raising his voice, and ultimately pushing him. In addition, all of these events occurred at around 11:45 PM in a store where Officer Weatherspoon was significantly outnumbered by a crowd that was becoming increasingly hostile toward him. Taking all of these factors into account, the Court finds that Officer Weatherspoon had probable cause to arrest Jackson pursuant to Section 97-35-7.

The Court need not go any further as to the probable cause analysis, as it is well-settled that an officer need only have probable cause as to one charge for an arrest to be valid. *See Durant v. Gretna City*, 2020 WL 263669, at *26 n. 421 (E.D. La. Jan. 17, 2020) (quoting *Wells v. Bonner*, 45 F.3d 90, 95 (5th Cir. 1995)) ("If there was probable cause for any of the charges made . . . then the arrest was supported by probable cause, and the claim for false arrest fails."). In light of the Court's probable cause finding, Jackson's false arrest claim fails as a matter of law. *Cuadra*, 626

F.3d at 813. Summary judgment is therefore granted in Officer Weatherspoon's favor on that claim.

*ii. Excessive Force*

Jackson also claims that Officer Weatherspoon used excessive force when effectuating the arrest. At this juncture, the Court must again note Jackson's procedural shortcomings, which have limited the evidence available to the Court at this time. In his Amended Complaint [29], Jackson alleges that Officer Weatherspoon "struck [him] in the eye and body with what [Jackson] believe[s] to be brass knuckles or some other device not issued as part of standard police equipment or uniform for Leland Police officers." In his Affidavit [56-1], Officer Weatherspoon stated that he "attempted to defend [himself] and subdue Jackson, striking him in the process." He further stated that "[a]t no time did I possess or utilize brass knuckles. At no time did I brandish or use a weapon." *Id*. Likewise, Jackson's Affidavit [65] makes no reference whatsoever to brass knuckles. Thus, because Jackson has provided no evidence to support his allegation that Officer Weatherspoon utilized brass knuckles, the Court can do nothing but disregard and dismiss that allegation.[5]

Jackson does allege, however, that "Officer Weatherspoon grabbed my arm and began swinging the handcuffs. He struck me in the head with the cuffs, then slapped me to the concrete floor of the store." [65]. Since the Court must view the evidence in the light most favorable to Jackson at this stage in this proceedings, the appropriate question is whether Officer Weatherspoon striking Jackson in the head with handcuffs and slapping him to the floor constituted excessive force.[6]

---

[5] While the Court must view all evidence in the light most favorable to the plaintiff at this stage in the proceedings, Jackson has provided no summary judgment type evidence that brass knuckles were utilized, thereby necessitating this result. *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S. Ct. 2548 (1986) (holding that the nonmovant must "go beyond the pleadings" and "designate specific facts showing that there is a genuine issue for trial.").

[6] The Court also notes that the alleged excessive force occurred while Officer Weatherspoon's body cam went black. As noted above, the audio remains intact throughout the duration of the video, but the picture is lost for approximately three minutes after Jackson pushed Officer Weatherspoon.

"To prevail on an excessive-force claim, the plaintiff must show (1) an injury, (2) that resulted 'directly and only' from a use of excessive force, and (3) that the force used was 'objectively unreasonable.'" *Goode v. Baggett*, --- F. App'x ---, 2020 WL 1983196, at *3 (5th Cir. Apr. 24, 2020) (citing *Flores v. City of Palacios*, 50 F.3d 391, 396 (5th Cir. 2004)). "[T]he question centers not around 'whether a certain quantum of injury was sustained, but rather 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *McGuffey v. Blackwell*, 784 F. App'x 240, 243 (5th Cir. 2019) (quoting *Wilkins v. Gaddy*, 559 U.S. 34, 37, 130 S. Ct. 1175, 175 L.Ed.2d 995 (2010)).

For purposes of this Motion [56], the first two elements are satisfied. Jackson suffered an injury to his eye, which occurred during the subject incident. Officer Weatherspoon does not dispute either of these elements, instead basing his argument on the third element—that the force he used was objectively reasonable.

Regarding the third element, "[t]he inquiry is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Griggs v. Brewer*, 841 F.3d 308, 312 (5th Cir. 2016) (quoting *Graham*, 490 U.S. at 398) (internal quotations omitted). The Fifth Circuit has directed that, in making this determination, district courts should balance "the nature and quality of the intrusion on the individual's Fourth Amendment interest against the countervailing governmental interests at stake." *Goode*, 2020 WL 1983196, at *4 (quoting *Goodman v. Harris Cty.*, 571 F.3d 388, 397 (5th Cir. 2009)).

Importantly, "[t]he use of force must be evaluated 'from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" *Griggs*, 841 F.3d at 312 (quoting *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012)) (additional citations

omitted). "Factors to consider in determining whether the force was 'objectively reasonable' include the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id*. (citing *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009)) (additional citations omitted); *Goode*, 2020 WL 1983196, at *4 (considering same three factors in analyzing whether officer's conduct was objectively reasonable).[7]

The first factor of the objective reasonableness analysis concerns the severity of the crime at issue. Officer Weatherspoon testified in his Affidavit [56-1] that he had been informed by a reliable source that Jackson possessed crack cocaine and that he had sold crack cocaine to another individual earlier that night. The Fifth Circuit has previously held that this factor weighed in favor of officers who entered into a home believing that persons inside the home were dealing cocaine. *See Darden v. City of Fort Worth, Tex.*, 880 F.3d 722, 729 (5th Cir. 2018) ("The magistrate judge who issued the warrant determined that there was probable cause to believe that suspects at the residence were dealing drugs. *These types of drug crimes are certainly serious offenses*. . . Thus, the severity of the crime at issue weighs in favor of the officers.") (emphasis added). In addition, as noted above, Jackson violated Mississippi Code Section 97-35-7 by refusing to comply with Officer Weatherspoon's lawful commands. *See* Miss. Code Ann. § 97-35-7; *S.M.K.S.*, 155 So.3d at 750. The Fifth Circuit noted in *Goode* that disorderly conduct and resisting arrest—two non-violent misdemeanors—militated against the use of force. 2020 WL 1983196, at *4. While

[7] In his untimely-filed Affidavit [65], Jackson referenced an encounter he had with Officer Weatherspoon prior to the night in question. Jackson stated that he was charged with drug offenses in June 2016. *Id*. When Jackson was released on bond for that offense, Officer Weatherspoon was present. *Id*. Jackson says that he "made a comment that Officer Weatherspoon was gay. At that point Officer Weatherspoon stated that he was going to get me." *Id*. Presumably, Jackson included these allegations in an attempt to show Officer Weatherspoon's subjective intent in arresting him at McCray's on the night in question. However, the Fifth Circuit has explicitly directed that an officer's actions be considered *objectively*. *See Griggs*, 841 F.3d at 312. The Court therefore will not consider these allegations pertaining to his alleged subjective intent.

cognizant that such conduct alone weighs against the use of force, when Jackson's resistance is considered in addition to Officer Weatherspoon's legitimate concern that Jackson had recently been engaged in selling crack cocaine, Officer Weatherspoon's position is further bolstered. Thus, the Court finds that the severity of the crimes at issue weigh in favor of Officer Weatherspoon's position.

The second factor concerns "whether the suspect poses an immediate threat to the safety of the officers or others[.]" *Id*. Throughout the video, Jackson appears to become increasingly agitated and hostile toward Officer Weatherspoon. Jackson first responds to Officer Weatherspoon verbally and begins walking away. Later, he slaps away Officer Weatherspoon when he attempts to grasp Jackson's arm to arrest him. Then, after people began shouting inside the store, Jackson used both hands to forcefully push Officer Weatherspoon away from him.

Considering the situation objectively, a reasonable officer in Officer Weatherspoon's position could have believed that his safety was in danger. Officer Weatherspoon did not know whether Jackson had a firearm or some other weapon on his person. All Officer Weatherspoon would have known at that time was that Jackson, an individual who he had reason to believe had just engaged in a drug transaction, was becoming increasingly aggressive toward him. Considering how Officer Weatherspoon would perceive Jackson's conduct as it occurred, the Court concludes that this factor also weighs in favor of finding that the force exerted by Officer Weatherspoon was reasonable. *Griggs*, 841 F.3d at 313 ("A court must measure the force used under the facts as a reasonable officer *would perceive them*, not necessarily against the historical facts.") (emphasis previously added).

Finally, the Court turns to the third factor—whether the suspect was actively resisting arrest or attempting to evade arrest by flight. *Id*. at 312. The Court finds that Jackson was in fact actively

resisting arrest prior to Officer Weatherspoon's use of any force against him. The video clearly shows Officer Weatherspoon request that Jackson step outside with him. After Jackson refused to do so, Officer Weatherspoon asked Jackson to place his hands behind his back. Jackson again failed to comply. He also cautioned Jackson to "stop resisting" before Jackson pushed him. Jackson was undoubtedly actively resisting arrest prior to Officer Weatherspoon using any force against him. Thus, the Court finds that all three factors weigh in favor of Officer Weatherspoon's position.[8]

In addition to each of these factors weighing in favor of Officer Weatherspoon's position, the Court notes that the Fifth Circuit has affirmed summary judgment against a Section 1983 plaintiff under similar circumstances. *Griggs*, 841 F.3d 308. In *Griggs*, an officer conducted a routine traffic stop around 2:00 AM after observing a vehicle run a red light. *Id*. at 311. The officer requested the driver to submit to a field sobriety test because the officer smelled alcohol. *Id*. When the driver failed the sobriety test, the officer directed him to place his hands behind his back. *Id*. When the officer grabbed the driver's hands, the driver "lurched to the side and said 'no, no.'" *Id*. The officer immediately performed a "takedown" maneuver and threw the driver face-down onto the ground and landed on top of him. *Id*. When the driver still would not submit to the arrest, the officer "punched [him] with a closed fist to the back of the head in an effort to gain control of his arms; when [the driver] pulled his arms back again, [the officer] punched him several more times to regain control." *Id*. The officer and his backup eventually arrested the driver. *Id*. After the driver was pushed into the police car, he kicked the officer in the chest. *Id*. The officer then quickly climbed on top of the driver and closed-fist punched him in the head. *Id*.

[8] In his Memorandum [64], Jackson failed to reference the applicable factors and failed to make any argument in his favor as to their applicability in this case.

In analyzing whether the officer used excessive force when performing the initial "takedown" maneuver, the Fifth Circuit determined that the officer's conduct was not constitutionally unreasonable. *Id*. at 314. In reaching this conclusion, the Fifth Circuit specifically noted that the officer was forced to make a split-second decision as to the appropriate manner to handle an individual who was behaving erratically. *Id*. The Fifth Circuit also held that the officer was entitled to qualified immunity for his punches to the back of the suspect's head as well as his punch when the suspect was inside the police car. *Id*. at 315.

As noted above, Jackson alleges that Officer Weatherspoon struck him in the head with the handcuffs and slapped him to the concrete floor. However, even taking Jackson's allegations as true, the body camera footage makes clear that none of this conduct occurred prior to Jackson actively resisting arrest. In other words, Officer Weatherspoon exerted no force upon Jackson until *after* Jackson had already refused to comply with his commands and pushed him away. In addition, considering the amount of force that the Fifth Circuit sanctioned in *Griggs*, the Court finds that, even taking as true the Plaintiff's allegations as to the force exerted by Officer Weatherspoon, constitutionally excessive force was not exerted upon Jackson. *See*, *e.g.*, *Rollins v. Hattiesburg Police Dept.*, 2015 WL 4276386, at *6 (S.D. Miss. July 14, 2015) (quoting *Graham*, 490 U.S. at 396) ("[I]t is well established 'that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it.'").

Ultimately, the Court finds that Officer Weatherspoon's actions were objectively reasonable, and no constitutional violation occurred. Jackson's excessive force claim against Officer Weatherspoon is therefore dismissed.[9]

---

[9] Because no constitutional violation occurred, Jackson's individual and official capacity claims against Officer Weatherspoon, as well as his municipal liability claim against the City of Leland, must be dismissed. *See Victoria W. v. Larpenter*, 369 F.3d 475, 482 (5th Cir. 2004) (holding that for a plaintiff to prevail on a Section 1983 claim, there must be a "deprivation of a right secured by federal law[.]").

*B. Section 1985 Conspiracy Claim*

To support his Section 1985 conspiracy claim, Jackson alleges that "[Officers] Combs and James together with [Officer] Weatherspoon conspired, colluded, planned and/or scheme to accuse Plaintiff of assault on a police officer to cover up the intentional, malicious, violent and unlawful beating and assault of Plaintiff committed by [Officer] Weatherspoon." [29]. Though Jackson makes no reference to a particular statute under which he asserts his conspiracy claim, the Court will construe it as a Section 1985(3) federal conspiracy claim.

In order to succeed on a conspiracy claim under Section 1985(3), a plaintiff must establish "(1) a conspiracy involving two or more persons; (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws; and (3) an act in furtherance of the conspiracy; (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States." *Hilliard v. Ferguson*, 30 F.3d 649, 653-54 (5th Cir. 2004). "Moreover, the Supreme Court has stated that 'the language requiring intent to deprive of equal protection, or equal privileges and immunities, means there must be some racial or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' actions.'" *Oliver v. Prator*, 438 F. Supp. 2d 676, 679 (W.D. La. 2006) (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S. Ct. 1790, 29 L.Ed.2d 338 (1971)).

Setting aside various other deficiencies in Jackson's Section 1985 claim, Jackson has made no contention at any stage in these proceedings that Officer Weatherspoon's conduct was in any way motivated by discriminatory animus. Furthermore, based upon the analysis in the preceding section, Jackson cannot establish that any of the underlying conduct in which Officer Weatherspoon engaged was illegal or caused a deprivation of Jackson's constitutional rights or privileges. *See Jackson v. City of Hearne, Texas*, --- F.3d ---, 2020 WL 2466374 (5th Cir. May 13,

2020) (affirming dismissal of Section 1985 claim where the plaintiff alleged "no underlying constitutional violations"); *Earnest v. Lowentritt*, 690 F.2d 1198, 1202 (5th Cir. 1982) ("The existence of an independent illegal act is a necessary . . . element of a 1985(3) claim."). There is no genuine issue of material fact as to Jackson's Section 1985 claim, and summary judgment is therefore granted in the Defendants' favor.

*III. State Law Claims*

In his Amended Complaint [29], Jackson asserts that he is "entitled to relief under [Mississippi] common law for the brutal beating he incurred . . . and the cover up and false arrest[.]" Officer Weatherspoon contends that the Mississippi Tort Claims Act immunizes him from Jackson's state law claims.

"[T]he MTCA is the exclusive state remedy against a governmental entity and its employees for tortious acts or omissions which give rise to civil liability." *Black v. North Panola Sch. Dist.*, 461 F.3d 584, 594 (5th Cir. 2006) (citing Miss. Code Ann. § 11-46-7(1)). The Act specifically states that the remedies which it provides are "exclusive of any other civil action or civil proceeding by reason of the same subject matter against the governmental entity or its employee . . . for the act or omission which gave rise to the claim or suit." Miss. Code Ann. § 11-46-7(1). The Act shields governmental employees acting within the course and scope of their employment from individual liability, specifically providing:

> An employee may be joined in an action against a governmental entity in a representative capacity if the act or omission complained of is one for which the governmental entity may be liable, but no employee shall be held personally liable for acts or omissions occurring within the course and scope of the employee's duties.

Miss. Code Ann. § 11-46-7(2). Jackson contends that Officer Weatherspoon cannot take advantage of this immunity because he acted maliciously and beyond the scope of his employment at the time

of the incident. While making these allegations in his Amended Complaint [29] and other filings, Jackson has provided no evidence to support his contention that Officer Weatherspoon acted beyond the course and scope of his employment at the time of the subject incident. However, the Court need not specifically address that issue since the statute of limitations is dispositive as to Jackson's state law claims.

All actions brought under the Mississippi Tort Claims Act must "be commenced within one (1) year next after the date of the tortious, wrongful or otherwise actionable conduct[.]" Miss. Code Ann. § 11-46-11(3)(a). Here, the subject incident occurred on August 2, 2016. However, Jackson did not send a Notice of Claim Letter notifying the City of Leland of the potential claim until September 13, 2017. [56-7]. Thus, Jackson did not act within the time limitation set forth in the Mississippi Tort Claims Act.

However, as noted above, Jackson argues that the Mississippi Tort Claims Act is inapplicable because Officer Weatherspoon's conduct was intentional and malicious. Even assuming that to be the case, Jackson's claims are still time-barred pursuant to the one year statute of limitations on intentional torts under Mississippi law. *See* Miss. Code Ann. § 15-1-35 ("All actions for assault, assault and battery, maiming, false imprisonment, malicious arrest . . . shall be commenced within one (1) year next after the cause of such action accrued[.]"). The Mississippi Supreme Court has also extended the one year statute of limitations to other intentional claims, such as intentional infliction of emotional distress. *See Jones v. Fluor Daniel Servs. Corp.*, 32 So.3d 417, 423 (Miss. 2010).

Therefore, regardless of whether the Mississippi Tort Claims Act applies, a one-year statute of limitations is applicable. Because Jackson did not send his Notice of Claim Letter or initiate suit

within one year of the subject conduct, his state law claims are time-barred. Summary judgment is therefore granted in the Defendants' favor on all of Jackson's state law claims.

*Conclusion*

For the reasons set forth above, the present Motion [56] is GRANTED. All claims against Officer Weatherspoon and the City of Leland are DISMISSED *with prejudice*. This CASE is CLOSED.

SO ORDERED, this the 27th day of July, 2020.

/s/ Sharion Aycock
UNITED STATES DISTRICT JUDGE